IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE FARM FIRE & CASUALTY COMPANY,<br><br>                    Plaintiff,<br><br>     vs.<br><br>B.T.B., INC., d/b/a/ DATA CONSULTANTS,<br><br>                    Defendant.<br>_____/ | CASE NO. CV-F-10-1990 LJO DLB<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY** (Doc. 5)<br><br>**ORDER ON PLAINTIFF'S SUMMARY JUDGMENT MOTION** (Doc. 13) |

INTRODUCTION

In this insurance coverage dispute, plaintiff State Farm Fire & Casualty Company ("State Farm") seeks declaratory relief, pursuant to 28 U.S.C. §2201, to determine its rights and obligations under a "Technology Services Errors and Omissions Liability Insurance Policy ("Policy") issued by State Farm to defendant BTB, Inc., d/b/a Data Consultants ("BTB"). BTB moves to dismiss this action, arguing that State Farm cannot demonstrate that no potential for coverage exists. In the alternative, BTB moves to stay this action until the underlying litigation is resolved. State Farm opposed the motions, and moved for summary judgment in its favor, arguing that it has no duty to defend BTB in the underlying action under the Policy as a matter of law. Having consider the parties arguments, this Court GRANTS BTB's motion to stay this action, and DENIES without prejudice BTB's motion to dismiss and State Farm's Fed. R. Civ. P. 56 motion.

# Background

This dispute arises out of an underlying action initiated against BTB and William Pardini ("Mr. Pardini") on July 1, 2010, styled *Credit Bureau Connection, Inc. v. William Pardini and B.T.B. Inc., d/b/a/ Data Consultants, Case No. CV F 10-1202 LJO DLB* ("underlying action"). BTB tendered its defense to State Farm pursuant to the Policy. State Farm accepted its defense under a reservation of rights, and filed the instant action seeking a declaration that it has no duty to defend BTB in the underlying action. The pending motions are based on the following underlying facts.

## Underlying Action

The complaint in the underlying action ("complaint") asserts one cause of action against Mr. Pardini–breach of fiduciary duty–and ten causes of action against BTB and Mr. Pardini jointly:

1. Unfair Business Practices;
2. Intentional Interference with Existing and Prospective Economic Advantage;
3. Negligent Interference with Existing and Prospective Economic Advantage;
4. Conversion;
5. Unjust Enrichment;
6. Accounting;
7. Injunctive Relief;
8. Copyright Infringement;
9. Breach of Contract; and
10. Declaratory Relief.

Credit Bureau Connection, Inc. ("CBC"), the plaintiff in the underlying action, seeks mandatory and prohibitory injunctive relief against Mr. Pardini and BTB (collectively "defendants") based on its allegations that defendants are misappropriating and infringing on its proprietary software, eF&I Complete. The underlying action is based on the following allegations, contained in the complaint:

CBC is a corporation originally formed by Michael Green ("Mr. Green") in 2004. CBC provides car dealerships with access to credit reports for individual car purchasers. CBC is able to order credit reports from each of the three credit bureaus through a license held by Mr. Green ("bureau license"). Since 1988, Mr. Green has also been in the business of providing car dealerships with finance and

insurance software through his sole proprietorship known as Automotive Marketing Profit Systems ("AMPS"). BTB is wholly owned and operated by defendant Mr. Pardini. BTB is also in the business of providing finance and insurance software to automobile dealerships.

Shortly after the formation of CBC, Mr. Green and Mr. Pardini agreed to pool their assets, and CBC became a joint venture between the two. According to their agreement, CBC would have access to BTB's business infrastructure, including its employees and office space, while BTB would have access to CBC's bureau license and contacts in the automobile industry. Mr. Pardini became a 50% shareholder, officer, and director of CBC.

CBC began to work with Darin Larsen ("Mr. Larsen"), a computer consultant working for BTB. CBC paid Mr. Larsen directly for the time he spent working on CBC business, and BTB paid Mr. Larsen separately for his BTB work. In March 2006, Mr. Larsen, on behalf of CBC, began to develop a web-based software system that would integrate both the credit reporting as well as financial and insurance systems services. The project was authorized by Mr. Green and Mr. Pardini as officers and directors of CBC. In consideration of his efforts, Mr. Larsen became a twenty percent (20%) shareholder of CBC, with Mr. Pardini and Mr. Green each contributing ten percent (10%) of their respective interests in the company. Mr. Larsen was paid hourly for his work by CBC.

By July 2007, the integrated software known as eF&I Complete was ready to be sold. The development of the software was paid for entirely by CBC. Mr. Larsen provided the initial concept and overall design. The source code and other technical aspects of the system were created byBTB employees working under the direction and supervision of Mr. Larsen. CBC paid the BTB employees for the expense of the development of the project. Both CBC and BTB marketed eF&I Complete under its individual name and for its own account.

In January 2008, CBC and BTB came to the following agreement: the companies would split Mr. Larsen's salary equally; BTB would pay CBC a 50% commission from all revenues generated from its use of the bureau license; CBC would pay BTB 20% of all the revenues received from CBC customers as compensation for the use BTB's administrative and technical support of eF&I Complete; and BTB would pay CBC a total of $86,000 as reimbursement for a portion of CBC's costs with the development of eF&I Complete. The parties operated under this agreement for two years.

1  From mid-2007 through early 2010, CBC contracted with individual automotive dealerships, automotive dealership groups, and national resellers who marketed the software. In addition, CBC and BTB entered into multiple integrated agreements through which CBC and BTB became jointly obligated to provide and support the software.

Beginning in early 2010, Mr. Pardini began to express his dissatisfaction with the compensation that he and BTB received in connection with the support of eF&I Complete. The parties were unable to resolve the issue, and Mr. Pardini, Mr. Green, and Mr. Larsen agreed that the operations of CBC and BTB should be separated completely. In April 2010, CBC acquired its own office space and personnel. At the same time, the CBC principals continued to discuss the details of the separation, including which company would have title to eF&I Complete and what compensation would be paid to the other for a perpetual license.

Although separation discussions were ongoing, all parties agreed that both companies would continue to have access to eF&I Complete. Unbeknownst to CBC, however, Mr. Pardini and BTB converted the eF&I Complete software by blocking CBC's access to the features of the software that are necessary to demonstrate the software and to install information regarding new customers. In addition, BTB employees have modified the software's administrative rights, making it impossible for CBC's representatives to support existing customers in connection with their operation of the system. Moreover, Mr. Pardini has made statements to CBC's existing and prospective customers that only he and BTB could provide and support the eF&I Complete software. CBC requested defendants to restore its access to all feature of eF&I Complete. Defendants have refused these multiple requests.

Based on these allegations, CBC contends that its ability to service its customers, integration partners and resellers have been jeopardized and that its entire business. CBC asserts that defendants' actions are interfering with CBC's ability to honor existing contracts and are causing the loss of current and prospective customers, goodwill, and prospective market share. CBC contends that its shareholder, director and officer, Mr. Pardini, breached his fiduciary duty of loyalty to CBC, and has intentionally interfered with valuable CBC contracts in a calculated effort to deprive the remaining CBC shareholders of their livelihood. The complaint alleges that Mr. Pardini and BTB "were the agent and employee of each of the other co-defendants, and in committing the acts alleged, was [sic] acting in the scope of their

4

authority as such agents and employees and with permission and consent of their co-defendants." Compl., 4:17-21.

**Policy, Tender of Defense, and Response**

At the time the complaint was filed, BTB had several insurance policies in effect with State Farm. BTB tendered its defense to State Farm under each of these policies, including the Policy at issue in this action.

On August 26, 2010, State Farm sent a letter to Mr. Pardini to inform him of State Farm's position that it has no duty to defend him in the underlying action. State Farm contended that Mr. Pardini qualifies as a "named insured" under the Policy. The Policy defines "Named Insureds" as:

> partners, officers, directors and employees, but only for Wrongful Acts within the scope of their duties in such capacity for the Named Insured.

State Farm contends that Mr. Pardini is a "named insured," because he is the President and sole shareholder of BTB. Although Mr. Pardini is a "named insured," State Farm asserted that Mr. Pardini is excluded from coverage pursuant to Exclusion 2.a., which provides:

> 2. We are not obligated to pay Damages or Defense Costs or defend Claims made by:
> a. Any enterprise:
> (1) In which any of You, individually or collectively, own an interest greater than 10% of the total ownership.

State Farm opined, *inter alia*, that since Mr. Pardini is a named insured and owns 40% stock in the plaintiff in the underlying action, Exclusion 2.a. bars coverage for both Mr. Pardini and BTB. Although State Farm denied defense coverage for Mr. Pardini, State Farm accepted BTB's defense under a reservation of rights and is currently defending BTB in the underlying action.

**Declaratory Relief Action and Pending Motions**

State Farm filed the instant action on October 19, 2010, seeking a declaration that it has no duty to defend BTB in the underlying action pursuant to the Policy. In addition, State Farm seeks recoupment costs for the monies it has paid to defend BTB. The underlying action and the declaratory relief action are related actions before this Court.

BTB moved to dismiss or stay this action on November 11, 2010. BTB argues that the instant action must be dismissed or stayed because it is premature. BTB contends that the factual issues related

to whether Mr. Pardini would qualify as a "named insured" under the Policy are disputed, and must be resolved in the underlying action before a determination regarding coverage can be made. BTB submits that State Farm cannot establish that there is no possibility of coverage, since the factual issues are unresolved as to whether Mr. Pardini was acting in his capacity, whether he had the authority to act in that capacity, and what percentage of the claimant, CBC, Mr. Pardini owns. BTB claims that this action must be stayed or dismissed because of the prejudice that BTB will experience if the declaratory action is decided while the underlying action is pending. BTB points out that a stay under these circumstances is required if certain prejudice will occur based on overlapping factual issues between the underlying and declaratory relief actions.

On December 23, 2010, State Farm opposed BTB motion to dismiss, and moved for summary adjudication. State Farm argues that because BTB is excluded under the Policy, it is entitled to judgment on this issue as a matter of law. State Farm's motion relies on the following "undisputed" facts: BTB is a named insured. Mr. Pardini is a named insured in his role as officer, director, partner or employee of BTB. Mr. Pardini is excluded from the Policy because he owns over 10% of the claimant, CBC. Therefore, BTB is excluded from coverage under the Policy as a matter of law. State Farm argues further that because the undisputed facts establish that BTB is excluded from the Policy, there is no reason to stay this action. State Farm seeks summary adjudication in its favor that BTB is excluded from the Policy and that it is entitled to recoupment costs.

BTB replied to State Farm's opposition, and opposed State Farm's motion on January 14, 2011. In its reply, BTB contends that the underlying factual issues on which State Farm bases its argument are disputed. BTB argues that under the Policy, Mr. Pardini is a named insurer only for "Wrongful Acts within the scope of [his] duties in such capacity for the Named Insured." BTB asserts that whether Mr. Pardini was acting within the scope of his duty in his capacity as either a partner, officer, or employee of BTB is unresolved, and must be resolved first in the underlying action. BTB reiterates that it will be prejudiced in multiple ways if this Court rules on the coverage issue before this and other facts are resolved in the underlying action. BTB's requests this action be stayed because of the overlapping facts presented in the underlying and instant actions.

State Farm filed a reply on January 17, 2011. State Farm argues that for purposes of its duty to

defend, it can establish whether Mr. Pardini acted within the scope of his authority based solely on the allegations contained the complaint. Because CBC alleged that Mr. Pardini acted in such a scope in the complaint, BTB is excluded from coverage as a matter of law.

Having reviewed the parties arguments, the relevant law, and the record, this Court found these motions suitable for a decision without a hearing, vacated the January 24, 2011 hearing, and issues the following order.

## MOTION TO STAY

Because BTB was the original movant, the Court shall consider BTB's motions first, beginning with its motion to stay.

### Duty to Defend Generally

Under California law, an insurer's duty to defend against litigation brought against the insured by a third party arises whenever the insurer ascertains facts that give rise to even the potential for indemnity under the policy. *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005). An insurer "must defend a suit which *potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966) (italics in original). "The duty to defend is determined by reference to the Policy, the complaint, and all facts known to the insurer from any source." *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993); *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). To determine whether an insurer's duty to defend has been triggered, the Court considers the following:

> If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance.

*Scottsdale Ins. Co. v. MV Trans.*, 36 Cal. 4th 643, 655 (2005). "The insured need only show that the underlying claim may fall within policy coverage the insurer must prove it cannot." *Montrose*, 6 Cal. 4th at 300. "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose*, 6 Cal. 4th at 300; *Horace Mann*, 4 Cal. 4th at 1081.

"When determining whether a particular policy provides a potential for coverage," the Court is

"guided by the principle that interpretation of an insurance policy is a question of law." *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal.4th 377, 390 (2005). "The insurer is entitled to summary adjudication that no potential for indemnity exists ... if the evidence establishes as a matter of law that there is no coverage." *Id*. (internal citations and quotations omitted).

### Declaratory Relief While Underlying Action is Pending

State Farm seeks declaratory relief of its rights while the underlying action remains pending. Declaratory relief actions to determine whether or not coverage exists brought during the pendency of the underlying action "are disfavored because of the practical difficulties they create for an insured that must defend against two actions simultaneously." *Hillenbrand v. Ins. Co. of N. America*, 104 Cal. App. 4th 784, 804-05 (2002). To hold otherwise would mean that "any time an insurance company had a questionable claim due to an uncertain exclusion clause, it could defend, under a reservation of rights, and immediately bring an action for declaratory relief...As a result, the duty to defend would eventually be no broader than the duty to indemnify." *Cal-Farm Ins. Co. v. TAC Exterminators, Inc.*, 172 Cal. App. 3d 564, 580 (1985).

"To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action." *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 301 (1993) ("*Montrose I*"). "By contrast, when the coverage question is logically unrelated to the issues of consequence in the underlying case, the declaratory relief action may properly proceed to judgment." *Montrose Chemical Corp. v. Superior Court,* 25 Cal. App. 4th 902, 908 (1994) ("*Montrose II*"). A declaratory relief action must be stayed if "there are any issues to be resolved in the declaratory relief action which would overlap with issues to be resolved in the underlying action, such that proceeding on the declaratory relief action could prejudice the insured in the trial of the underlying action." *Great American Ins. Co. v. Superior Court*, 178 Cal.App.4th 221, 233 (2009) ("If the factual issues to be resolved in the declaratory relief action overlap with issues to be resolved in the underlying litigation, the trial court *must* stay the declaratory relief action.) (emphasis in original). Accordingly, to determine whether to stay this action, the Court must consider whether the coverage question turns on facts to be litigated at trial or whether the coverage issue can be determined

as a matter of law based on unrelated issues or undisputed facts. *Id*. In addition, this Court must consider the possibility of prejudice to both parties. *Id*.

### Overlapping Factual Issues

BTB correctly points out that there are factual issues that overlap between the underlying action and the declaratory relief action. To determine whether Mr. Pardini qualifies as a "named insured" under the Policy two factual issues must be resolved. First, the Court must determine whether Mr. Pardiniis either a partner, officer, director or employee of BTB. According to the complaint, Mr. Pardini was the sole shareholder of BTB, and presumably qualifies as one of these positions. Second, Mr. Pardini is a named insured only if his "Wrongful Acts" were "within the scope of [his] duties in such capacity for" BTB. This factual issue is unresolved in the underlying litigation, and overlaps with the present coverage issue.[1]

State Farm argues that it is undisputed that Mr. Pardini is a "named insured" and that he owns more than 10% of the claimant, CBC. State Farm relies on the allegations of the complaint for these undisputed facts. State Farms argument fails for two reasons. First, contrary to State Farm's argument, the Court's consideration is not restricted to the face of the complaint. Although "the determination whether the insurer owes a duty to defend is usually made . . . by comparing the allegations of the complaint with the terms of the policy," *Horace Mann*, 4 Cal.4th at 1081, a court may also consider facts known to the insurer and extrinsic to the third party complaint. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 276 (1996). "This is so because current pleading rules liberally allow amendment[, and] the third party plaintiff cannot be the arbiter of coverage." *Montrose I*, 6 Cal.4th at 296. Second, the complaint does not establish that Mr. Pardini was acting in his capacity or had authority to act in such capacity. BTB presents evidence to dispute this allegation. The bare allegation in the complaint related to whether Mr. Pardini was acting in such a capacity does not establish this fact as a matter of law.[2]

---

[1] BTB also presents evidence to support its position that there is a factual issue as to whether Mr. Pardini owns more than 10% of CBC. The facts as to Mr. Pardini's interest in CBC may have changed between the time the complaint was filed and the present.

[2] The complaint alleges that BTB and Mr. Pardini "were the agent and employee of each of the other co-defendants, and in committing the acts alleged, was [sic] acting in the scope of their authority as such agents and employees and with permission and consent of their co-defendants." Compl., 4:17-21.

**Possible Prejudice to BTB**

An insured may experience three types of potential prejudice if a declaratory relief action were resolved prior to the underlying action: (1) the insurer joins forces with the claimant to collaborate against the insured; (2) the insured is required to fight a two-front war; and (3) collateral estoppel. *Montrose II*, 25 Cal.App.4th at 909-910. A stay is always required when the first and second types of potential prejudice are implicated because they are caused by factual overlap. *Great American*, 178 Cal.App.4th at 235-236. BTB asserts that the instant action implicates all three types of possible prejudice.

The insured may be prejudiced when the insurer joins forces with the third-party in the underlying action as a means to defeat coverage. This is the most common variant of prejudice resulting from the concurrent litigation of an underlying dispute and a declaratory relief action regarding coverage. *Montrose I*, 25 Cal.4th at 302. BTB argues that this type of prejudice is demonstrated by State Farm's Statement of Facts, submitted in connection with the pending summary judgment motion. State Farm claims that three facts are uncontroverted because those facts were admitting in BTB's answer in the underlying action. BTB claims that State Farm is attempting to use its admissions in the underlying action as evidence to support its motion that there is no duty to defend. BTB claims that this demonstrates that State Farm has an incentive to work together with CBC against BTB to defeat coverage. The Court agrees that there is a possibility of this type of prejudice under these circumstances.

The insured may also be prejudiced when it is forced to fight a two-front war, "doing battle with the plaintiffs in the third party litigation while at the same time devoting its money and its human resources to litigating coverage issues with its carriers." *Montrose II*, 25 Cal.App.4th at 910. Here, BTB would be prejudiced if it is required to defend both actions at the same time. Indeed, because this type of prejudice "stems from the reality of any concurrent litigation, it will be an issue for the trial court to consider *every time* an insured seeks to stay a declaratory relief action while the underlying action is still pending." *Great American*, 178 Cal.App.4th at 236 (emphasis in original).

An insured may also be prejudiced by collateral estoppel. "If the declaratory relief action is tried before the underlying litigation is concluded, the insured may be collaterally estopped from relitigating

any adverse factual findings in the third party action, notwithstanding that any fact found in the insured's favor could not be used to its advantage." *Montrose II*, 25 Cal.App.4th at 909 -910.  As was the case with the first type of prejudice, prejudice due to collateral estoppel requires a factual overlap between the two lawsuits. *Great American*, 178 Cal.App.4th at 236.  BTB argues that the type of prejudice is also present in this case, because it faces the danger of being collaterally estopped from re-litigating the issue of whether or not Mr. Pardini was acting in the course and scope of his employment with BTB in the underling action.  Since this disputed fact is at the heart of CBC's claims against Mr. Pardini in the underlying action, a court determination on this issue would have an adverse impact on BTB's defense in the underlying action.

For the foregoing reasons, this Court finds that all three types of prejudice are implicated in this action.  Because the potential prejudice to the insured also involves overlapping factual issues with this declaratory relief action, the Court is required to stay this declaratory relief action. *Great American*, 178 Cal.App.4th at 236.

**Possible Prejudice to State Farm**

Although the Court finds overlapping factual issues and possible prejudice to the insured, the Court must also consider the prejudice to the insurer in fashioning its order.  *See*, *Great American*, 178 Cal.App.4th at 236 (A "trial court should consider the possibility of prejudice to *both* parties.") (emphasis in original).  "The insurer has often paid large sums of money in defense costs, and, absent a judicial determination otherwise, it must keep paying until the underlying action is resolved." *Montrose II*, 25 Cal.App.4th at 910.  While this action is stayed, "the carrier gets to keep paying and paying" to defend BTB in the underlying action. *Id*.  "For this reason, the trial court should not hesitate to fashion orders which attempt to balance [the parties'] conflicting concerns." *Id.*

The Court notes these conflicting concerns of the insured and the insurer, and balances these against such factors as "the anticipated duration of the underlying litigation, whether the insured has separate counsel in the two actions, and the availability of other insurance to cover the costs of defense." *Great American*, 178 Cal.App.4th at 237.  The record reflects that the anticipated duration of the underlying litigation, and State Farm's continued defense of BTB under a reservation of rights in that action, weighs in favor of a stay in this action.  The parties in the underlying litigation have completed

extensive law and motion practice and multiple settlement conferences. The parties in the underlying action are operating under a stipulated order and are working to resolve the outstanding issues in the underlying action. Under these specific circumstances, this Court finds a stay in the declaratory relief action to be appropriate until the underlying action is resolved.

**Conclusion**

Factual issues in the underlying action and declaratory relief action are overlapping, and present the possibility of prejudice to the insured. Having balanced the appropriate concerns, and considering the circumstances of this action and the applicable case law, this Court grants BTB's motion to stay. Because this Court stays the action, BTB's pending motion to dismiss and State Farm's pending motion for summary judgment are denied without prejudice. The parties may re-raise these motions once the underlying action is resolved.

**CONCLUSION**

For the foregoing reasons, this Court:

1. GRANTS BTB's motion to stay;
2. DIRECTS the clerk of court to stay this action; and
3. ORDERS the parties to file a joint status report with this Court no later than July 25, 2011.

IT IS SO ORDERED.

**Dated:**   **January 26, 2011**                         /s/ Lawrence J. O'Neill
                                                                          UNITED STATES DISTRICT JUDGE